UNITED STATES of America

v.

Ramon BARRIENTOS and
Michael Karasik.

Crim. No. 79–180.

United States District Court,
E. D. Pennsylvania.

Jan. 23, 1980.

Roberto Rivera-Soto, Philadelphia, Pa.,
W. Cecil Jones, Asst. U. S. Atty., for plaintiff.

William A. Clay, Miami, Fla., for Mr.
Barrientos.

Carl H. Lide, Miami, Fla., for Mr. Karasik.

MEMORANDUM

POLLAK, District Judge.

I.

On July 31, 1979, an indictment was returned by a federal grand jury in the Eastern District of Pennsylvania. The indictment charged that Ramon Barrientos, Cesar Sandino Grullon, Virgilio Armando Mejia, and Michael Karasik had conspired in violation of 18 U.S.C. § 371 to violate 22 U.S.C. § 2778 which makes it a crime to export certain categories of weapons without a license from the federal government. The indictment alleged the commission of overt acts in furtherance of the conspiracy both in the Eastern District of Pennsylvania and in the Southern District of Florida. The geographic diversity of the indictment paralleled the geographic diversity of the four

defendants: Grullon worked in the Eastern District of Pennsylvania and resided in nearby New Jersey. Mejia worked and resided in the Eastern District of Pennsylvania. Barrientos and Karasik both resided and worked in the Southern District of Florida.[1]

On October 5, 1979, I granted the Government's motion to sever the trial of defendants Barrientos and Karasik from the trial of defendants Grullon and Mejia. Thereafter, defendants Grullon and Mejia were tried without a jury. At the close of the Government's case, I denied motions for directed verdicts of acquittal predicated on the strict *scienter* standard articulated by the Court of Appeals for the Fifth Circuit in *United States v. Wieschenberg*, 604 F.2d 326 (1979). I held that in this Circuit the proper construction of 22 U.S.C. § 2778 (and hence of an indictment charging a conspiracy to violate 22 U.S.C. § 2778) invokes the less demanding *scienter* standard reflected in Judge Broderick's jury instructions in *United States v. Byrne*, 422 F.Supp. 147, 168 n.20 (E.D.Pa.1976), *in part affirmed and in part reversed on other grounds, sub nom. United States v. Cahalane*, 560 F.2d 601 (3d Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). At the close of the case, I found defendants Grullon and Mejia guilty. In explaining my verdict, as announced from the bench on December 4, 1979, I stated that the Government's case fully met the *Byrne* standard (sustained in *Cahalane*) although not, in my view, the *Wieschenberg* standard as I understood it.

The trial of defendants Barrientos and Karasik was scheduled to follow shortly after the conclusion of the trial of Grullon and Mejia. On December 12, 1979, Barrientos and Karasik moved to transfer the trial to the Southern District of Florida. On December 14 the Government filed its memorandum opposing the transfer, and on that day I held a hearing on the motion. Following the hearing I granted the motion to transfer, announcing my decision from the bench.[2] My decision involved an examination of the several relevant factors identified, and apparently approved, in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 244, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964). After examining the various factors, I concluded with the following exposition of the elements which seemed to me to be controlling:

My conclusion is that this case should be transferred and I come to that conclusion because, with balances reasonably close on several of the items, the items that seem to me dispositive are those that go to, I think, the very, very extraordinary financial burden that would be imposed on the defendants and their attorneys if this case were retained here and I don't put at a low level the Government's inconvenience in continuing its prosecution here where its attorneys are located, where the really indispensible member of this whole case, Agent Fleisher, is located, but he too is mobile, I guess. I don't put the Government's interests at naught but it's only a matter, if I may say so, of inconvenience, not of fundamental disadvantage, and to the extent that one is talking about balances of convenience as

1. The indictment also contained a second count alleging a conspiracy unrelated to that charged in the first count and which named defendants Grullon and Mejia but not defendants Barrientos and Karasik. That second count is irrelevant to the issues considered in this opinion.

2. In its motion to reconsider the transfer order the Government characterizes the hearing as "an *ex parte, in camera* proceeding from which the Government was excluded." Government's Motion to Reconsider the Change of Venue Order, Paragraph 10. There was one phase of the hearing in which the Government did not participate. That was the phase in which de-

fendants Barrientos and Karasik outlined in considerable detail—including the names and hoped-for testimony of several potential witnesses—the anticipated defense described in its broad contours on pages 4 and 5 of the motion to transfer. Recognizing that it would have been inappropriate for the Government to be apprised of the *identities and anticipated testimony* of defense witnesses at this pre-trial stage, the Government agreed that I should conduct that phase of the hearing *in camera* and with no Government attorneys present. N.T. 17, 20.

between the Government and the defendants, I conclude that on the question of transfer where the matter is in equilibrium the Government's interest must be subordinated, but having offered that dictum I do want to add that I do not regard this as a situation in which the matter is in equilibrium. I do think that the comparative financial burdens weigh very heavily in favor of permitting the defendants and their lawyers to try the case on their home grounds and, apart from the dollar cost, I think the factor of homeness is a factor which deserves real weight when there is no compulsion that points in another direction.

I think it perfectly clear that if we were now to look back and say "Where would this indictment have been laid and this prosecution brought had there not been a Mr. Grullon and a Mr. Mejia charged in the same indictment?" the case would have been brought in Miami against Mr. Barrientos and Mr. Karasik and I think that is the status quo ante which would have been which should now be reconstructed by an order transferring this case to the Southern District of Miami.

N.T. 87–89.

## II.

The Government has now moved for reconsideration of the order of transfer. The reason assigned is that I did not give weight to the likelihood that the trial of Messrs. Barrientos and Karasik, if it is to take place in the Southern District of Florida rather than here, will be governed by the standard of *scienter* prevailing in the Fifth Circuit—namely, the strict *Wieschenberg* standard which I declined to follow in the trial of Messrs. Grullon and Mejia. According to the Government:

11. In its December 14, 1979 oral findings, the Court did not specifically address the fact that, upon a *forum non conveniens* transfer, the law of the transferee district would apply.

12. In its December 14, 1979 oral findings, the Court did not take note of the conflict of law between the Fifth Circuit and all other Circuits as a "special element which might affect a transfer" (N.T. 87); this is one of the factors adopted *sub silentio* in *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 244 [84 S.Ct. 769, 771, 11 L.Ed.2d 674] (1964), as relevant in considering a *forum non conveniens* motion.

13. Because of the conflict of law between the Circuits, which conflict arose after the filing of Bill of Indictment 79–180, it is not in the interest of justice to transfer the instant cause to the Southern District of Florida for trial.

14. It is not in the interest of justice that the defendants Ramon Barrientos and Michael Karasik be tried under a stricter standard of proof than the one used for the defendants Cesar Sandino Grullon and Virgilio Armando Mejia, particularly when the Court declined to adopt such stricter standard.

15. The timing of the motion for transfer suggests an attempt at forum-shopping, the need for which became obvious after this Court declined to follow the Fifth Circuit-*Weischenberg* [*sic*] standard.

The contention is not one of Government pressed in its papers opposing the motions to transfer, or in the hearing on the motions. Nonetheless, I will consider the Government's contention on its merits: no purpose would be served in persisting in the order of transfer if it was an abuse of discretion or erroneous as a matter of law.

## A.

██ I find unpersuasive the Government's submission that *Platt v. Minnesota Mining and Manufacturing Co.* "sub silentio" requires that I include, among the factors to be considered as bearing on the appropriateness of transfer, the likelihood that a change of venue will carry with it a change of applicable law. To the extent that *Platt* speaks to the matter at all, I think it counsels a judge *not* to take a consideration of this sort into account. In that case, a district judge sitting in Illinois

declined to transfer a criminal case to Minnesota for the reason, *inter alia*, that in the judge's view it would be hard to select in Minnesota a jury not biased in favor of the defendant, a large Minnesota-based corporation. The Court of Appeals for the Seventh Circuit held that it was inappropriate for a judge, in weighing the elements going into a discretionary determination to transfer or to retain a case, to conjecture about how a case would be conducted if tried in another district. *Minnesota Mining and Manufacturing Co. v. Platt*, 314 F.2d 369, 375 (7th Cir. 1963). "We believe," said the Court of Appeals, "it would be an unsound and dangerous innovation in our federal court system for a judge in any district to appraise or even speculate as the efficacy of the operations of a federal court of concurrent jurisdiction in another district." *Id.* Therefore, in order to correct the Illinois district judge's erroneously based denial of the motion to transfer, the Court of Appeals directed transfer of the case to the federal court sitting in Minnesota. *Id.* The Supreme Court reversed—*not* because it disagreed with the Seventh Circuit's holding that the district judge should have excluded from his calculus any consideration of whether a fair trial could be had in Minnesota, but rather because the Court of Appeals should, after determining that the district judge had erred, have simply vacated the order of transfer and remanded so that the district judge in whom the discretion was vested, could redetermine the transfer question, confining his attention to the factors which it was proper for him to consider. Accordingly, I feel that it would be outside the ambit of *Platt* for me to entertain the Government's contention that the potential application of the Fifth Circuit's *Wieschenberg* rule, in preference to Judge Broderick's *Byrne* rule sustained by the Third Circuit in *Cahalane*, "is not in the interest of justice."

### B.

But the Government's position has a more basic flaw. It proceeds from a predicate—

namely, that there is in this instance a "conflict of law"—which, in Section II(A) of this opinion, I assumed *arguendo* to be true, but which, in my judgment, cannot withstand analysis.

When two or more states—whether sovereign nations or the quasi-sovereign states which compose the United States and other federal unions—have significant connections with a single legal controversy, it is not uncommon that the different states will be the source of discrepant legal norms, any of which could reasonably be regarded as constituting a proper rule of decision. Choosing the most proper of the competing norms is a chief end of that branch of jurisprudence denominated "conflicts of laws." It is in the handling of civil diversity cases that federal courts are most apt to run into conflicts questions: in that context, (1) a federal court is bound to follow the whole substantive law of the state in which it sits, including its conflicts rules,[3] and (2) when a case is transferred, pursuant to 28 U.S.C. § 1404(a), from a less convenient venue in one state to a more convenient venue in another state, the law of the transferor forum follows the case.[4]

The mere statement of these familiar propositions suffices to show that characterization of the problem presented in the current circumstance as a "conflict of law between the Circuits" is a misnomer. The substantive legal norm applicable to the Government's criminal case against Messrs. Barrientos and Karasik is Section 2778 of Title 22 of the United States Code. There is no competing norm, and hence there is no conflict of laws. There is—apparently—a conflict of *interpretations*, as between the Fifth and Third Circuits, of the single applicable norm. I happened to think the Third Circuit's interpretation is the sounder one. I follow it, however, not because I subscribe to it but because, sitting in Philadelphia, I am required to do so, just as a district judge sitting in Miami must follow the Fifth Cir-

---

**3.** *Klaxon Co. v. Stentor Electric Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**4.** *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

cuit interpretation whatever that judge's own views may be. In short, I have no *a priori* basis for concluding that the "interest of justice" would be served by applying the Third Circuit's interpretation of Section 2778 rather than the Fifth Circuit's interpretation, or vice-versa. Whether one interpretation or the other governs the trial of Messrs. Barrientos and Karasik is, therefore, a matter not relevant to my decision on whether the trial should be transferred to the Southern District of Florida.

What I have said is not intended to signify that discrepant judicial interpretations of a particular federal legal norm do not pose a problem of consequence. The opposite is true—and most especially so when the norm is part of the federal criminal code, since a civilized legal order cannot tolerate the imposition of criminal sanctions on some, but not on others, for the same conduct. But resolving the inconsistent rulings of two courts of appeals is not the job of a district court; it is the job of the Supreme Court. Thus, if, in the present circumstance, it were to fall out that transfer to Miami of the case against Messrs. Barrientos and Karasik were to lead to their acquittal, through the application of *Wieschenberg*, while the convictions of Messrs. Grullon and Mejia were to be sustained by our Court of Appeals on the authority of *Byrne* and *Cahalane*, it would then be expectable that the Supreme Court would grant certiorari to review the cases of Grullon and Mejia, with a view to restoring the uniformity of federal law. See Sup.Ct.R. 19.1(b).

The Government's Motion to Reconsider the Change of Venue Order will, therefore, be denied.