UNITED STATES of America

v.

Blake ATWOOD.

Cr. No. 82–00095.

United States District Court,
E. D. Pennsylvania.

May 20, 1982.

U. S. Atty. Edward F. Borden, Jr., Philadelphia, Pa., for the government.

A. John Snite, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

In this criminal prosecution, the government has charged defendant Blake Atwood in a sixteen-count indictment with violating the United States Code's prohibitions against mail fraud (18 U.S.C. §§ 1341 and 1342; Counts 1–3, 12–16), making fraudulent statements or representations to government departments or agencies (18 U.S.C. § 1001; Counts 4–10), and knowingly transmitting a forged writing for the purpose of defrauding the United States (18 U.S.C. § 494; Count 11). Defendant, when the Vice-President of Damascus Hosiery Mills, Inc. ("Damascus"), a corporation with its principal place of business in Virginia, obtained contracts with the Armed Forces for the manufacture of socks. The government contends that defendant "rigged" the contract bidding. The government also claims that the defendant devised a "kickback" scheme by which subcontractors paid money to a nonexistent "Damascus Yarn Sales" in return for obtaining subcontracts in connection with the government contracts. Defendant now moves to transfer this action to the Western District of Virginia; the motion will be granted.

Federal Rule of Criminal Procedure 21(b) permits transfer of criminal proceedings to another district "[f]or the convenience of parties and witnesses, and in the interest of justice . . . ." The Supreme Court has identified the factors to be considered: "(1) location of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 771–72, 11 L.Ed.2d 674 (1964). *See, United States v. Haley*, 504 F.Supp. 1124 (E.D.Pa.1981).

The defendant is presently located in western Virginia. Defendant has conceded that he spent limited time (three winter months in two years) since his retirement in a condominium he owns in Florida but his testimony at the hearing on this motion establishes that he remains a resident of Virginia. He certainly has no meaningful contact with the state of Pennsylvania. In accord with recent decisions in this District, defendant's home district is entitled to "real weight." *Haley, supra* at 1126; *United States v. Barrientos*, 485 F.Supp. 789, 791 (E.D.Pa.1980).

The location of possible witnesses is an important consideration because it directly affects defendant's ability to defend himself at trial. It also is related to the expense to the parties. Defendant has submitted an affidavit listing twenty-five proposed witnesses. Of these, eight would tes-

tify to the facts of the alleged fraudulent schemes and the remainder to defendant's character and reputation in the community.

All fact witnesses reside in western Virginia or North Carolina; three of these fact witnesses are related to the defendant. All possible character witnesses, except for one, reside in that area; that witness resides in Atlanta. Assuming *arguendo* that the court would not permit all of the character witnesses to testify because of the cumulative effect of their testimony, *see, Haley, supra* at 1128, defendant, a retiree who has testified to an annual income of approximately $20,000, would still incur considerable expense in reimbursing travel and lodging expenses even only for those witnesses who are likely to testify.

Although the government stated at the hearing that it would pay certain expenses of a Philadelphia trial for defendant's non-family fact witnesses, the government's offer does not remove the location of witnesses as a factor favoring the grant of the defense motion. The government has not challenged the significance of the testimony defendant proposes to offer, so it is unclear why it would not aid the defense to have all of his witnesses available to appear in court. This court cannot assume that the witnesses, except for defendant's wife, will come to Philadelphia at their own expense; even the wife's expenses must be considered since her testimony is material and she would not incur those expenses in Virginia. This case concerns a closely held family corporation and testimony of family members may be the most material. Indeed, at the hearing it was alleged without contradiction that a principal witness against defendant will be his brother-in-law. But the government has not offered to pay expenses of family members who would testify in favor of defendant rather than against him.

Moreover, the court cannot ignore expenses of defendant's character witnesses, whose testimony is unquestionably admissible, as if character testimony in this trial will be unimportant. It will not be: each count of the indictment depends in part on defendant's intent and character testimony is highly relevant to this issue. *See, e.g., Petersen v. United States*, 268 F.2d 87, 88 (10th Cir. 1959). Although the trial judge will have the discretion to limit the number of witnesses to avoid unnecessary, cumulative testimony, 2 *Weinstein's Evidence* ¶ 404[05] (1981), it cannot now be assumed that the character witnesses will not be permitted to testify.

The costs defendant would incur in transportation to Philadelphia and lodging here for five character witnesses and three family fact witnesses would impose a considerable financial burden on defendant. Defendant has estimated the costs for each witness to come here to be a minimum of $350, a figure which seems quite reasonable. Eight witnesses, then, would involve an expense of at least $3,000 and probably significantly more.

The location of witnesses involves more than just the cost to defendant in calling willing witnesses to trial in a distant forum. The inconvenience to the witnesses themselves must be considered. Defendant avers ill health of five of his eight fact witnesses (four elderly persons with serious heart problems, and one with a serious back problem). There is no suggestion any of the character witnesses are in poor health. Defendant does not aver sufficient factors for the court to ascertain whether the witnesses' business and personal affairs would be seriously disrupted by a trip to Philadelphia; it is doubtful that significant disruption would occur by reason of the limited time required for their appearance. But the health problems of the fact witnesses must figure significantly in the court's decision, because where it is possible to transfer the trial to a federal court relatively close to the witnesses' doctors and reached by these witnesses with far less physical stress, the court should seek to accommodate the interest of justice with the interest of the witnesses.[1]

---

1. It is unclear what the exact location of this trial will be when transferred to the Western

District of Virginia. The district seat is in Roanoke, but there is a station in Abingdon, a short

Defendant argues that the presence of other witnesses located in Virginia might be required unexpectedly in the course of trial; it would then be difficult to obtain their testimony if the trial is held in Philadelphia. This is sheer speculation and of little weight.

Having concluded that defendant would incur significant expense in obtaining known witnesses for trial in Philadelphia and that some of those witnesses would suffer risks to health from travel, it is necessary to explore the inconvenience to government witnesses by transfer. These witnesses' needs are no less important than those of the defense witnesses; while the government has greater resources with which to pay travel and lodging expenses, public funds are to be safeguarded. The government has listed four "bid-rigging" witnesses, four "kickback" witnesses, and Defense Personnel Supply Center ("DPSC") mailroom personnel (to testify to "the use of the mails in transmitting the contract . . . ."). Four of the prosecution's witnesses on "kickbacks" are from the defendant's home area; only the mailroom personnel are from Philadelphia. In contrast, none of defendant's witnesses are from Philadelphia.

Of four government witnesses on "bid-rigging" who live in or around Philadelphia, two are contracting officers with the DPSC. Transfer will be inconvenient for them and testifying in Virginia will take them from their work longer than if they testified in Philadelphia. The same can be said for two Philadelphia police officers who are to provide expert opinions on alleged forgery of certain bids. While this inconvenience is real, it is impossible to prevent any inconvenience at all to either of the parties. The level of inconvenience must be balanced. In view of the lesser number of witnesses and the comparative health of those who must travel if this case is or is not transferred, the balance favors granting defendants' motion.

The location of events likely to be in issue weighs in favor of transfer. One issue at trial will be whether or not defendant's activities caused bidding not genuinely competitive; the activities in question have a Virginia rather than Pennsylvania nexus. The defendant travelled to Philadelphia on several occasions to discuss bids with DPSC personnel and receipt and examination of disputed bids took place at the DPSC, but the allegedly unlawful bids would have been created in the course of defendant's business in Virginia. The other issue, whether or not there were unlawful kickbacks, will center not on whether government checks were mailed from Philadelphia but whether defendant in Virginia engaged in unlawful arrangements with subcontractors primarily in the states of North Carolina and Virginia.

The location of documents favors the transfer only slightly. The government's records are currently contained in "two file drawers;" it is reasonable to assume those records include the relevant records from the DPSC. Their volume is not great and they could readily be transported to Virginia. The government subpoenaed defendant's documents supporting its contentions during the grand jury investigation. Defendant's records were primarily located in Damascus Mills' offices and in the Damascus bank used by defendant.

Defendant no doubt has already obtained the documents deemed necessary for his defense and no representation has been made that their volume makes transport to Philadelphia difficult. But if during the trial defendant should require additional records, the documents would most likely be in Damascus. Because of the speculative nature of this discussion, little significance is afforded this factor.

There is no disruption of defendant's business wherever the trial is held. Defendant is retired and no longer in business.

distance from defendant's home in Damascus. The government and defense counsel do not know whether this matter would be heard in Abingdon or Roanoke; but in either case the defense witnesses could drive to the courthouse to testify and return to their homes the same day.

The expense to the parties has been discussed in connection with the location of witnesses. While the Assistant United States Attorney in charge of this case and a case agent with the Defense Criminal Investigative Service will have to travel to Virginia upon transfer, defendant and his attorney would otherwise have to travel to Philadelphia. The government argues that defendant's attorney maintains offices in Washington and therefore his expenses in travelling to Philadelphia from there will be less than theirs in travelling from Philadelphia to Roanoke. This may be true as to travel expenses alone but that does not take into account expenses for lodging and meals during the course of the trial. Also, these comparative attorney expenses are insignificant compared to the expenses defendant will incur in bringing witnesses to Philadelphia.

Location of counsel neither mandates nor precludes transfer. It will be as inconvenient and costly for defendant's counsel [2] to appear for trial in Pennsylvania as for the Assistant United States Attorney in Philadelphia to appear for trial in Virginia.

Relative accessibility of place of trial would suggest denying transfer if considering accessibility to counsel but granting transfer if considering accessibility to witnesses. Philadelphia is a major urban center more accessible to Washington and Atlanta than is Roanoke or Abingdon. But Roanoke and Abingdon are as accessible to Philadelphia as Philadelphia is to Roanoke and Abingdon. So the accessibility argument really depends on who should bear the expense and burden of travel. This has been discussed in regard to the location of defendant, location of documents and convenience of parties above.

Comparison of the docket in Virginia with that in the Eastern District of Pennsylvania suggests no problem with transfer.

The 1981 Annual Report of the Director, Administrative Office of United States Courts states that as of June 30, 1981 there were 257 criminal cases pending in the Eastern District of Pennsylvania but only 56 in the Western District of Virginia. While the number of criminal cases pending per judgeship in the Eastern District of Pennsylvania was 13.5,[3] the number of cases filed per judgeship, weighted by degree of complexity, shows a higher criminal caseload per judge in the Eastern District of Pennsylvania (29) than in the Western District of Virginia (24). The median time interval in months from filing to disposition is greater in the Eastern District of Pennsylvania (4.4: all cases; 7.8: jury trial) than in the Western District of Virginia (2.8: all cases; 4.3: jury trial).

One "special factor" deserves the court's attention. Defendant has filed a motion to dismiss the indictment or to suppress evidence because of alleged prosecutorial misconduct. He contends that the Assistant United States Attorney assigned to this matter improperly negotiated leniency for an unindicted co-conspirator in return for his testimony against the accused; he also alleges unethical conduct by the attorney then representing them both and thereby a violation of his attorney-client privilege. Defendant has requested decision on this motion prior to transfer so that this court could rule on the conduct of attorneys in this district. But whether or not local disciplinary proceedings are necessary or proper, attorney conduct affecting the trial must be ruled on by the judge presiding at trial. If the case is transferred, defendant may incur additional expense in pressing his motion, but this is unlikely because the alleged misconduct was on the part of persons present for the trial anyway. Since there will be no additional burden on the government, it will not be considered as a factor militating against transfer.

---

**2.** This discussion considers convenience to defendant's counsel of record. Defendant also has personal counsel in Abingdon, Virginia, whose health precludes travel to Philadelphia. While defendant is no doubt sincere in desiring the additional presence of personal counsel at trial, the court can only give consideration to the convenience of counsel chosen by defendant to conduct his defense.

**3.** On June 30, 1981 there were 19 judges in the Eastern District of Pennsylvania and 4 in the Western District of Virginia.

Defendant has also suggested in correspondence to the court after hearing on this motion that related criminal charges of income tax evasion are pending against defendant in Virginia and that this should be considered by the court. However, this information has not been made a matter of record in an appropriate manner and therefore is not a factor.

To summarize, the residence of the defendant, location of possible witnesses and the cost of witnesses traveling to Philadelphia compared with the expense of the government witnesses traveling to Virginia, and the location of events in issue all favor transfer. The location of documents likely to be involved and the relative docket conditions are additional factors somewhat favoring transfer. Against this only the relative accessibility of place of trial favors denial of the motion, and that is plainly insufficient in this context.