**NEWTON v. UNITED STATES.**
No. 5593.

Circuit Court of Appeals, Fourth Circuit.
July 28, 1947.

J. Mills Newton, pro se.

Howard C. Gilmer, Jr., Acting U. S. Atty., of Pulaski, Va. (Henry T. Clement,

796

Asst. U. S. Atty., of Chatham, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

J. Mills Newton was tried, convicted and sentenced in the United States District Court for the Western District of Virginia (sitting at Danville, the residence of Newton), under an indictment in twenty counts, charging violations of 26 U.S.C.A. Int.Rev. Code, § 3793(b) (1). The pertinent part of that section reads:

"Any person who wilfully aids or assists in, or procures, counsels, or advises the preparation or, presentation under, or in connection with any matter arising under, the internal revenue laws, of a false or fraudulent return, affidavit, claim, or document, shall (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document) be guilty of a felony, * * *."

The first count of the indictment, which is altogether typical, charges in part:

"That on or about the 24th day of May, 1945, in the City of Danville, in the Western District of Virginia, J. Mills Newton unlawfully and feloniously did wilfully aid and assist in, and procure, counsel and advise the preparation under, and in connection with a matter arising under, the Internal Revenue laws, of a false and fraudulent claim in the sum of $79.61, based upon amended income tax returns for the years 1942 and 1943, of Cooper T. Garner and Lizzie Garner * * *, and which claim was filed with the Collector of Internal Revenue for the District of Virginia."

Of the multitudinous points made by Newton, we think only four need be considered and discussed by us: (1) Improper venue; (2) insufficiency of the indictment; (3) denial of a continuance; (4) charge to the jury.

Venue.

■ This point was discussed ably and at great length by Judge Barksdale below. D.C., 68 F.Supp. 952. We deem it necessary to add little to what Judge Barksdale has there written. Newton's contention here is that since the returns were filed at Richmond, as was required by law, in the Eastern District of Virginia, if he has committed any federal crime, this crime was therefore committed in the Eastern District of Virginia, and he could not be tried therefor (as he was tried) in the Western District of Virginia.

Any expressions in the opinion of Judge Learned Hand in United States v. Kelley, 2 Cir., 105 F.2d 912, 916, relied upon by Newton, which seem to be inconsistent with our view here, are not controlling for the reasons stated in the opinion of Judge Barksdale, 68 F.Supp. at pages 955, 956. And we regard as particularly significant in this connection, the provisions of § 42 of the Judicial Code, 28 U.S.C.A. § 103, which provides that an offense begun in one District and completed in another, may be tried in either District.

In Dobie on Federal Procedure, § 127, page 511, it is stated:

"All federal crimes are statutory, and these crimes are often defined, hidden away amid pompous verbosity, in terms of a single verb. That essential verb usually contains the key to the solution of the question: In what district was the crime committed? Without the exact language of the statute, particularly this verb, paraphrases and loose citations in this field are more than inaccurate; they are positively misleading. When, as is so often the case, the statute enumerates several such verbs, only scrupulous, even meticulous, nicety in exact quotation can prevent these statutes, as well as the decisions under them, from proving a snare and a delusion to the unwary."

In the instant case, the key verbs in the statute (set out above) are "aids," "assists in," "procures," "counsels" or "advises" the preparation or presentation of a false or fraudulent return, affidavit, claim or document. Certainly all the activities of Newton connoted by these statutory key verbs took place in the Western District of Virginia. In addition to the cases cited in the opinion below, see Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed.

482; Id., 202 U.S. 344, 26 S.Ct. 688, 50 L. Ed. 1057, 6 Ann.Cas. 362; Horner v. United States, 143 U.S. 207, 12 S.Ct. 407, 36 L.Ed. 126; In re Palliser, 136 U.S. 257, 10 S.Ct. 1034, 34 L.Ed. 514; United States v. Andrade, 5 Cir., 16 F.2d 776; Hart v. United States, 9 Cir., 11 F.2d 499.

### Insufficiency of the Indictment.

■ Newton attacks the validity of the indictment on numerous grounds. One ground is the failure of the indictment to charge "that the accused knew that the claims and returns were false and fraudulent." The indictment does, however, charge that Newton "unlawfully and feloniously did wilfully aid in * * * the preparation * * * of a false and fraudulent claim." This follows quite closely the language of the statute and is utterly inconsistent with a lack of guilty knowledge on Newton's part.

■ The contention of duplicity, we find utterly lacking in merit. The only count in the indictment to which this objection might fairly be made was the seventh count, and, on this count the Government formally entered a nolle prosequi. While the indictment could hardly serve as a model, Newton's objections to it are purely modal, and the indictment in no way prejudiced any of his substantial rights.

■ Although we think that the indictment does meet all essential requirements, it would have been desirable to state in the indictment, with greater particularity, the facts and circumstances, disclosing particularly wherein the claim of $79.61 was false and fraudulent. It may be noted, too, that Newton, though he moved for a dismissal of the indictment, did not ask for a bill of particulars. As was said by Judge Rose, speaking for our Court in Martin v. United States, 4 Cir., 299 F. 287, 288:

"The sufficiency of a criminal pleading should be determined by practical, as distinguished from purely technical, considerations. Does it, under all the circumstances of the case, tell the defendant all that he needs to know for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If so, it should be held good."

### Denial of a Continuance.

Newton further complains of the conduct of the trial judge in denying him a further continuance. The grounds on which this continuance was sought were the physical condition of Newton himself and the physical condition of his daughter, Mrs. Coyle, who was unable to travel to Danville, and who, according to Newton's claim, was an important witness on his behalf.

One continuance had already been granted to Newton on account of the inability of Mrs. Coyle to testify. There was no clear showing as to when she would be able to testify and the first indictment against Newton had been handed down nearly a year before the instant trial. At the trial, too, it appeared that the evidence of Mrs. Coyle would have been of very little, if any, benefit to Newton.

Judge Barksdale heard testimony, on the motion for a continuance, as to the physical condition of Newton and Mrs. Coyle and as to the likelihood of the attendance of Mrs. Coyle in case a continuance should be granted. The Government opposed the continuance and noted certain dilatory tactics on the part of Newton to postpone his trial as long as possible.

■■ The granting of continuances in a federal criminal trial is peculiarly a matter vested in the sound discretion of the trial judge. We certainly cannot say here that Judge Barksdale abused his discretion in denying a second continuance.

### The Charge to the Jury.

■ Several complaints are made by Newton as to the judge's charge to the jury. A careful reading of this charge has convinced us that it clearly stated the applicable law and accurately covered every essential element of the offenses charged. It was eminently fair, in every way, to the accused.

■ The trial judge's comments to the jury on the evidence were given for the purpose of clarifying the numerous issues involved and aiding the jury to arrive at a just verdict. This is a proper function of a federal judge.

Judge Barksdale went out of his way more than once to tell the jury that these comments were not binding on the jury and that the jury was the sole judge of the credibility of the witnesses and the weight to be given to their evidence.

We are convinced that Newton was convicted in a trial that was fairly conducted, without prejudice to any of his rights. The judgment of the District Court is accordingly affirmed.

Affirmed.