**In re UNITED STATES of America, Petitioner.**

**No. 83–1149.**

United States Court of Appeals, Fourth Circuit.

Submitted Feb. 21, 1983.

Decided May 11, 1983.

Rehearing and Rehearing En Banc Denied June 22, 1983.

David A. Faber, U.S. Atty., Benjamin L. Bailey, Mary S. Feinberg, Asst. U.S. Attys., Charleston, W.Va., for petitioner.

.David Wyant, Love, Wise, Robinson & Woodroe, Charleston, W.Va., for respondent.

Before RUSSELL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The United States seeks a writ of mandamus or prohibition compelling the district court for the Southern District of West Virginia to docket its prosecution of an individual and a corporation for alleged tax fraud. The individual and the corporation had been jointly indicted with two other individuals in the Southern District of West Virginia, but the district court had transferred the case against Nardone and his wholly-owned corporation to the Eastern District of New York where Nardone resided, and it declined to accept a retransfer of those cases.

We conclude that the district court misconstrued 18 U.S.C.A. § 3237(b) and that all of the cases are properly triable in the Southern District of West Virginia.

## I.

A federal grand jury sitting in Charleston, West Virginia indicted William Nardone, Barterline, Ltd., W. Garland Nealy and James C. Reed, Jr. on one count of conspiracy in violation of 18 U.S.C.A. § 371, and ten counts of aiding and assisting in the preparation and filing of false and fraudulent United States Partnership Returns of Income in violation of 26 U.S.C.A. § 7206(2) and 18 U.S.C.A. § 2. This indictment grew out of the syndication and promotion of ten "tax shelter" partnerships involving subleases of West Virginia coal bearing land. There is no allegation of any fraud or falsity in any personal income tax return filed by Nardone or any corporate income tax return filed by him on behalf of Barterline.

The defendants allegedly obtained control of a mineral lease of some four thousand acres of land in the Southern District of West Virginia. For the purpose of syndicating limited partnership interests in the coal, the tract was subdivided into twenty-two tracts, and ten limited partnerships were successfully syndicated. According to the indictment, this syndication was successfully accomplished by the dissemination of a false map, which included land in addition to that within the boundaries of the four thousand acre tract, and false reports by engineers and others of coal reserves on the land.

Each of the ten limited partnerships paid to Barterline as an advance royalty $350,000 in cash and gave it a non-recourse promissory note in the amount of $1,400,000. The general partner distributed to the limited partners K–1 forms showing the allocable portion of the tax loss of each limited partner, including his share of the $1,750,000 allegedly paid as an advance royalty. This generated allegedly fraudulent income tax deductions for the limited partners in the aggregate of $17.5 million dollars.

Nardone's office is in Manhattan in the Southern District of New York, and apparently Barterline was headquartered there or in the Eastern District of New York. Nardone's residence, however, was in the Eastern District of New York.

Nealy and Reed are West Virginians.

According to the indictment, there were conferences in Nardone's office in the Southern District of New York, and much of the activity in connection with the syndication of the partnership shares allegedly occurred there. There were other meetings and conferences in the Southern District of West Virginia, however, and the coal, which was the subject of the syndication was located there. The engineers and other alleged experts, who participated in the production of the technical reports which lent attractiveness to the scheme in the eyes of persons interested in tax sheltered income, are in West Virginia.

On Nardone's motion that the charges against him be transferred to the Eastern District of New York under the provision of 18 U.S.C.A. § 3237(b), the United States magistrate transferred those charges and the charges against Barterline. On motion

to reconsider, the district court ordered the transfer of those charges to the Eastern District of New York. He expressed disagreement with the majority of the panel that had decided *In re United States (Clemente)*, 608 F.2d 76 (2d Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). He thought the dissenting opinion of Judge Kearse more persuasive, and he relied upon her reasoning.

Not surprisingly, Judge Bramwell of the Eastern District of New York, looking to the decision of his own court of appeals, thought that the charges had been erroneously transferred. He transferred the cases back to the Southern District of West Virginia, but the district judge there refused to accept the retransfer and ordered that the cases not be placed upon the docket.

## II.

Section 3237(b) gives a defendant in certain prosecutions for a criminal violation of the Internal Revenue Code the option to have the case as to that taxpayer transferred from a district in which he is not a resident to the district of his residence. Among them is a charged violation of § 7206(2), as alleged in the substantive counts in this case, where the "offense involved use of the mails." In *Clemente*, the majority of the panel of the Court of Appeals for the Second Circuit found the words "where an offense involves use of the mails" ambiguous and construed them as confined to remedy the perceived evil that led to the enactment of that subsection. The evil was that the many taxpayers who are required to file income tax returns in an office of the Internal Revenue Service outside the district of their residence could be prosecuted in the district of the filing rather than in the district where they resided. This was thought an unfair advantage on the part of the Internal Revenue Service and an unfairness to the taxpayer. The words were thus construed to be applicable only when the use of the mails was the basis upon which the United States laid venue in a district other than that of the taxpayer's residence.

We agree with the Court of Appeals for the Second Circuit. That narrow construction of the words "where an offense involves use of the mails" is faithful to the result intended by Congress, but avoids the judicial inefficiency and duplicative proceedings that would be the inevitable result of a broader interpretation of that language.

In this case, the severance and transfer to New York of the charges against Nardone and Barterline would necessitate two trials instead of one. According to Judge Bramwell's opinion, each trial is estimated to take six weeks, and a trial in the Eastern District of New York would hardly serve the convenience of the many West Virginia witnesses.

Venue in this case is in no way dependent upon any mailing. The focus of the alleged conspiracy was in the Southern District of West Virginia. Many of the acts in furtherance of it were committed there, and the remaining acts in furtherance of the conspiracy were committed in the Southern District of New York and not in the Eastern District of New York. If Nardone is inconvenienced by a trial in the Southern District of West Virginia, it is only because he chose to go into that district to accomplish his allegedly fraudulent scheme.

Moreover, this is even further from the congressional objective than was *Clemente*. As mentioned earlier, there is here no charge founded upon the income tax return of any defendant. Fraud is charged in the preparation and filing of Partnership Returns of Income which are not personal to Nardone. One can readily understand the congressional concern for the taxpayer summoned to stand trial in a criminal tax case in a district other than that of his residence simply because he was required to file his personal tax return in that district. There is no indication of any such concern for one who is being prosecuted not as a taxpayer, but as a procurer of the filing of a fraudulent partnership information return when the business of the partnership is centered in the district of indictment.

### III.

Confident that the district court will now accept the retransfer of the charges against Nardone and Barterline and permit the case to be restored to its docket, we think that a formal writ need not actually issue.