UNITED STATES of America, Plaintiff,

v.

David N. HURWITZ, Marc Weitzen and Richard M. Firestone, Defendants.

Crim. No. 83–20065.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 21, 1983.

**548**

Samuel Strother, Trial Atty., U.S. Dept. of Justice, Washington, D.C., Mary S. Feinberg, Asst. U.S. Atty., Charleston, W.Va., for the U.S.

Thomas H. Dundon, James F. Neal, Neal & Harwell, Nashville, Tenn., Stanley E. Preiser, Preiser & Wilson, L.C., Charleston, W.Va., for defendant David N. Hurwitz.

John P. Cooney, Jr., Robert B. Fiske, Jr., Davis, Polk & Wardwell, New York City, Joseph R. Goodwin, Charleston, W.Va., for defendant Marc Weitzen.

Benjamin Brafman, New York City, for defendant Richard M. Firestone.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On June 30, 1983, a grand jury returned the within fifteen-count indictment, wherein Count One alleges that from approximately the Spring of 1976 until the date of the indictment, that the Defendants, Hurwitz, Weitzen and Firestone, violated 18 U.S.C. § 371 by knowingly conspiring to defraud the United States by impeding, impairing, obstructing and defeating the Internal Revenue Service's ascertainment, computation, assessment, management and collection of income taxes. The indictment further charges Hurwitz[1] and Firestone,[2] both of whom then resided in the Southern District of New York, with substantive violations of 26 U.S.C. § 7206(2).[3] Currently pending before the Court is Hurwitz's and Firestone's motion to dismiss the substantive § 7206(2) counts for lack of venue or, alternatively, for a transfer of these counts, along with the § 371 conspiracy count,[4] to the Southern District of New York, pursuant to 18 U.S.C. § 3237(b),[5] as well as all three of the Defendants' motion for a transfer to the Southern District of New York, pursuant to Rule 21(b), Federal Rules of Criminal Procedure. For the reasons set out below, the Court hereby grants Hurwitz's and Firestone's motion to dismiss the § 7206(2) counts for lack of venue, and grants the Defendants' motion for a transfer of the remaining § 371 conspiracy count to the Southern District of New York, pursuant to Rule 21(b), Federal Rules of Criminal Procedure.

### I. Factual Background

In its response to the Defendants' motions, the Government summarized the factual background of the case as follows:

---

1. Counts Two–Four, Six, Eight–Fifteen.

2. Counts Five and Seven.

3. 26 U.S.C. § 7206(2) provides:
   "Any person who ... [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document [shall be guilty of an offense against the United States]."
   It is now well settled that the reach of § 7206(2) is not limited to the actual preparers of an allegedly false and fraudulent return. See e.g., U.S. v. Crum, 529 F.2d 1380 (9th Cir.1980); U.S. v. McCrane, 527 F.2d 906 (3d Cir.1975) cert. denied 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976).

4. Cf., U.S. v. United States District Court, 693 F.2d 68 (9th Cir.1982); In Re U.S. (Clemente), 608 F.2d 76, 85 n. 11 (2d Cir.1979) cert. denied 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980).

5. Under the Government's theory, venue over Counts Two through Fifteen is not solely dependent upon the use of the mails. The provisions of 18 U.S.C. § 3237(b), therefore, are inapposite. See In Re U.S. (Nardone), 706 F.2d 494 (4th Cir.1983), adopting In Re U.S. (Clemente), 608 F.2d 76 (2d Cir.1979) cert. denied 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). But cf., U.S. v. United States District Court, 693 F.2d 68 (9th Cir.1982); U.S. v. DeMarco, 394 F.Supp. 611 (D.D.C.1975); U.S. v. Youse, 387 F.Supp. 132 (E.D.Wis.1975); U.S. v. Dalitz, 248 F.Supp. 238 (S.D.Cal.1965); U.S. v. Rosenberg, 226 F.Supp. 199 (S.D.Fla.1964); U.S. v. Kimble, 186 F.Supp. 616 (S.D.N.Y.1960); U.S. v. Wortman, 26 F.R.D. 183 (E.D.Ill.) reversed on other grounds 326 F.2d 717 (7th Cir.1964).

"Defendant David Hurwitz is a senior partner in a New York City law firm, Gordon, Hurwitz, Butowsky, Baker, Weitzen and Shalov (aka Gordon Hurwitz) and specializes in tax law. The law firm provided legal services for, and structured several limited partnership coal tax shelters during 1976 including Sortir Associates 2 and Malade Associates. Defendant Marc Weitzen is also a partner in the Gordon Hurwitz law firm, specializing in corporation law.

Richard Firestone was a partner in the general partnership called F.M.S. which was formed in 1975 and was involved in the promotion and creation of coal tax shelters.

Sortir Associates 2 was a Connecticut limited partnership in house coal tax shelter formed on December 31, 1976. The shelter obtained subleases on seams of coal underlying land located in Mingo County, West Virginia (Southern District of West Virginia).

*Formation of Sortir Associates 2*

At a meeting in the offices of the law firm of Gordon Hurwitz during the middle of December, 1976, Defendant Marc Weitzen inquired of Lyle E. 'Pete' Neal if there were other coal leases on property available and further stated 'we want to lease some property ourselves for our own tax shelter.' (Indictment—Overt Act 10). Subsequently, David Hurwitz contacted Defendant Firestone on or about December 15, 1976 and inquired whether F.M.S. had any coal properties that could be leased to the Gordon Hurwitz law firm. (Indictment—Overt Act 11). During December, 1976, Defendants Hurwitz and Weitzen were involved in recruiting investors or limited partners in Sortir Associates 2. Total cash receipts amounted to $675,582. (Indictment—Overt Act 12).

The properties which eventually became the basis for the limited partnership coal tax shelter were obtained through two subleases of coal rights: one from Ecart Associates and one from Stewart Justice to Theta Energy Associates. Both Ecart and Theta are Firestone-related entities; both subleases were executed and transferred to Sortir on December 31, 1976. All the coal properties are in Mingo County.

One of the Justice subleases was signed at the airport in Huntington, West Virginia, in the Southern District of West Virginia (Indictment—Overt Act 15). Pete Neal, the general partner of Sortir Associates 2 through his corporation, Ken Coal Company, Inc., transported to West Virginia a $150,000 check dated December 31, 1976, which check had been drawn on the checking account of Sortir Associates 2, and personally delivered the check to Stewart Justice in West Virginia in consideration of the sublease to Theta Energy Associates (Indictment—Overt Act 16). At the time Pete Neal transported and delivered the check from Sortir Associates 2 to Stewart Justice, he was acting as the agent and at the direction of David Hurwitz, Marc Weitzen and Richard Firestone.

As a result of the closing on December 31, 1976, the transfer of the subleases to Sortir, and the payment of $645,000 in cash and the giving of a $12,500,000 non-recourse promissory note, the investors in Sortir claimed deductions on their individual income tax returns averaging more than eighteen times their cash investment."

Government's Memorandum of Law in Response, at pp. 3–5.

## II. *Venue* [6]

Since Congress did not see fit to specify the *locus delicti* when it enacted 26 U.S.C.

---

6. "Venue in a federal criminal case is an issue of constitutional dimension: Article III guarantees a federal defendant a trial 'in the State where the said Crimes shall have been committed' and the sixth amendment provides him with a 'jury of the State and district wherein the crime shall have been committed.' These fundamental guarantees have been implemented by Federal Rule of Criminal Procedure 18 which provides that '[e]xcept as otherwise permitted by statute or these

§ 7206(2), it is incumbent upon the Court to do so by examining " 'the nature of the crime alleged and the location of the act or acts constituting it.' ... In determining the act or acts constituting the crime, ... [courts] have commonly focused on the verbs employed in the statute defining the offense." *U.S. v. Blecker,* 657 F.2d 629, 632 (4th Cir.1981) *cert. denied* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982) (citations omitted). In construing 26 U.S.C. § 7206(2)'s predecessor, the Fourth Circuit stated that: "The key verbs in the statute are 'aids,' 'assists in,' 'procures,' 'counsels,' or 'advises' the preparation or presentation of a false or fraudulent return, affidavit, claim or document." *Newton v. U.S.,* 162 F.2d 795, 796 (4th Cir.1947) *cert. denied* 333 U.S. 848, 68 S.Ct. 650, 92 L.Ed. 1130 (1948).

Notwithstanding the fact that Counts Two through Fifteen allege that Hurwitz and Firestone committed violations of 26 U.S.C. § 7206(2) "in the Southern District of West Virginia, and elsewhere", the Defendants argue that the Court should pierce this boilerplate language and find that there is not proper venue over Counts Two through Fifteen in the Southern District of West Virginia. In advancing this argument, Hurwitz maintains that he never entered West Virginia in connection with the Sortir and Malade transactions and that he did not have any contacts with the taxpayers while either he or they were in West Virginia.[7] Without specifying the nature of his visit, Firestone maintains that he was only in West Virginia once during the period of time covered by the indictment.[8] These Defendants further maintain that none of the returns in question were either prepared or filed in West Virginia. On the basis of these facts, Hurwitz and Firestone urge the Court to find that venue is improper in the Southern District of West Virginia, inasmuch as they did not render "aid," "assistance," "procurement," "counsel," or "advice" in this district.

The Government, on the other hand, maintains that Hurwitz and Firestone are accused of a "continuing offense" in Counts Two through Fifteen, and that venue is proper in the Southern District of West Virginia, pursuant to 18 U.S.C. § 3237(a).[9] In particular, the Government contends that Hurwitz and Firestone committed the alleged violations of 26 U.S.C. § 7206(2) in this district when Pete Neal, who was acting at the direction of the Defendants, delivered Sortir Associates 2's check for $150,000 to Stewart Justice on December 31, 1976, at the airport in Huntington, West Virginia, as consideration for Justice's sublease of certain coal properties located in Mingo County, West Virginia.

▪ The issue before the Court, therefore, is whether Hurwitz and Firestone violated 26 U.S.C. § 7206(2) in this district as a result of the December 31, 1976, transaction between their agent, Neal, and Justice.[10]

---

rules, the prosecution shall be had in a district in which the offense was committed.' "
*U.S. v. Billups,* 692 F.2d 320, 332 (4th Cir.1982) *review denied* —— U.S. ——, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983).

7. *See* Hurwitz affidavit ¶¶ 3 and 4.

8. *See* Firestone affidavit ¶¶ 5 and 6.

9. *See* note 5, *supra.*

10. The Government further argues that venue over Counts Two through Fifteen is proper in this district because (1) Sortir's coal was located in this district, (2) the general partner was a West Virginia corporation which was based in this district and (3) the engineers and experts who produced reports concerning the coal performed their work in this district. In advancing this argument, the Government relies upon the Fourth Circuit's opinion in *In Re U.S. (Nardone),* 706 F.2d 494 (4th Cir.1983). The Government's reliance on *Nardone,* however, is misplaced, inasmuch as the indictment in Criminal No. 82-20036 alleged that Nardone, on at least one occasion, *personally* performed an act of "aiding" or "assisting in" the filing of a false return in this district. *See* Indictment No. 82-20036 at ¶ 47(c).

In effect, the Government is equating the district wherein the Defendants' alleged scheme had, and perhaps may even continue to have, an impact, with the district wherein the Defendants committed the alleged offenses. This Court is unaware of any decision in a § 7206(2) prosecution which has either expressly, or tacitly accepted a venue theory akin to the one which the Government advances in the case at bar. In

Casting Neal in the role of an aider and abetter, and themselves as principals, Hurwitz and Firestone argue that they may not be properly tried on Counts Two through Fifteen in this district merely because of Neal's "accessorial" actions in this district. In advancing this argument, the Defendants rely on *U.S. v. Walden,* 464 F.2d 1015 (4th Cir.1972) *cert. denied* 410 U.S. 969, 93 S.Ct. 1436, 35 L.Ed.2d 705 (1973); *U.S. v. Bozza,* 365 F.2d 206 (2d Cir.1966) (Friendly, J.); *U.S. v. Sweig,* 316 F.Supp. 1148 (S.D.N.Y.1970), which hold that neither the common law, nor 18 U.S.C. § 2 authorizes the Government to try principals in a district where only their accessory's acts, as opposed to their own acts, were performed. The Government responds that *Walden* is distinguishable for two reasons. First, the principals in *Walden* were accused of having committed discrete, substantive crimes, as opposed to continuing ones, as are the Defendants at bar. Second, the Government maintains "that § 7206(2) is itself an 'accessory' statute, ... [which] does not require a culpable principal."

After having carefully considered these arguments, the Court agrees with the Defendants' assessment that venue over the § 7206(2) counts is improper in the Southern District of West Virginia. The fact that the substantive offenses alleged in Counts Two through Fifteen may be characterized as continuing crimes which may be "prosecuted in any district in which ... [they were] begun, continued or completed" simply sidesteps the essential issue of whether Hurwitz and Firestone committed the alleged offenses [11] in this district. Moreover, even if the Government is correct in its characterization of § 7206(2) as being an "accessory" statute, venue would still appear to be improper in this district, since the record does not indicate that either Hurwitz, or Firestone personally performed any accessorial acts in this district. As Judge Friendly stated in *Bozza,* "Congress seems to have been content with venue where the defendant's *own* accessorial acts were committed or where the crime occurred, without providing still another where the accessorial acts of agents took place." *U.S. v. Bozza,* 365 F.2d 206, 221 (2d Cir.1966) (emphasis added).

### III. *Rule 21(b) Transfer of Count One*

■ The Defendants, Hurwitz, Weitzen and Firestone, further move the Court to transfer Count One [12] of the within indictment to the Southern District of New York, pursuant to *Rule* 21(b), Federal Rules of Criminal Procedure, which provides that:

> "For the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceedings as to him or any one of the counts thereof to another district."

In ruling on the Defendants' motion, the Court must weigh the following factors:

> "(1) location of ... [the] defendant[s]; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of ... [Defendants'] business[es] unless the case is transferred; (6) expense of the parties;

---

rejecting the Government's theory, the Court is mindful that Congress has approved of the prosecution of "offense[s] involving the use of the mails, or transportation in interstate or foreign commerce" in "mere impact districts", 18 U.S.C. § 3237(a) ¶ 2. Inasmuch as Congress has not seen fit to do so with respect to prosecutions under 26 U.S.C. § 7206(2), the Court perceives that the Government's venue theory, at best, presents a close issue which must be resolved in the Defendants' favor. *Cf., U.S. v. Johnson,* 323 U.S. 273, 276, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944).

**11.** *Cf., Newton v. U.S.,* 162 F.2d 795 (4th Cir. 1947) *cert. denied* 333 U.S. 848, 68 S.Ct. 650, 92 L.Ed. 1130 (1948).

**12.** At the outset of its analysis of the Defendants' motion to transfer Count One of the within indictment to the Southern District of New York, pursuant to *Rule* 21(b), Federal Rules of Criminal Procedure, the Court notes that this § 371 conspiracy count may be properly prosecuted in this district, inasmuch as two overt acts in furtherance of the conspiracy are alleged to have been committed in the Southern District of West Virginia. *See Hyde v. U.S.,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *U.S. v. Anderson,* 611 F.2d 504, 509–10 n. 5 (4th Cir.1979); *U.S. v. Snead,* 527 F.2d 590 (4th Cir.1975) (*per curiam*).

(7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district ... involved; and (10) any other special elements which might affect a transfer."

*Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240, 243–44, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964). "[T]o warrant a transfer the defendant[s] must demonstrate and the court must be satisfied that the prosecution in the district where the ... [count] was properly returned will result in a substantial balance of inconvenience to ... [the Defendants]." *U.S. v. Baltimore & Ohio Railroad Co.,* 538 F.Supp. 200, 205 (D.D.C.1982), *quoting U.S. v. Jones,* 43 F.R.D. 511, 514 (D.D.C.1967).

A.  *Location of the Defendants.*

Each of the three Defendants reside within the Southern District of New York[13]—a factor favoring transfer to that district. *See e.g., U.S. v. Atwood,* 538 F.Supp. 1206, 1207 (E.D.Pa.1982); *U.S. v. Haley,* 504 F.Supp. 1124, 1126 (E.D.Pa. 1981); *U.S. v. Gruberg,* 493 F.Supp. 234 (S.D.N.Y.1979); *U.S. v. Aronoff,* 463 F.Supp. 454 (S.D.N.Y.1978).

B.  *Location of Potential Witnesses.*

Assistant United States Attorney Feinberg and Robert Fiske, Jr. have submitted affidavits on behalf of the Government and the Defendants, respectively, which indicate that some thirty-eight witnesses, exclusive of the Defendants' potential character witnesses and the lessors of the coal tracts, would be called at the trial of this action. Of these thirty-eight witnesses, twenty-three reside in New York,[14] while only five or [15] six reside in West Virginia. The remaining nine or ten reside in New Jersey, Florida, Illinois, Nevada and the District of Columbia. Since the overwhelming majority of the potential witnesses in this action reside in either New York, or in states which are far more readily accessible to New York, a major transportation center, than they are to Charleston, the Court finds that the convenience of the witnesses is a factor which strongly tilts in favor of a transfer to the Southern District of New York. *See e.g., U.S. v. Alter,* 81 F.R.D. 524 (S.D.N.Y.1979) (Weinfeld, J.).[16]

C.  *Location of Events in Issue.*

The Court finds that this factor similarly militates in favor of the transfer of this action, inasmuch as all but two of the overt acts specified in Count One are alleged to have been committed in the Southern District of New York. In making this finding, the Court is mindful of the fact that a transfer would all but preclude a New York jury from being able to view both the tracts of land under which the coal seams

---

13.  *See* 28 U.S.C. § 112(b).

14.  Eighteen of these twenty-three New York residents would be called as witnesses by the Defendants.

15.  Ms. Feinberg and Mr. Fiske differ over whether a Harry Williamson, who would be called as a witness by the Government, resides in Williamson, West Virginia, or in Illinois. *See* Exhibit A to the Defendants' Joint Reply Brief.

16.  Moreover, the Defendants have indicated that it is their intention to call members of the New York Bar and business community as character witnesses. *See,* Fiske affidavit, ¶ 7. The Court cannot underestimate the importance of these witnesses to the Defendants and of the greater likelihood that the Defendants will in fact be able to produce such witnesses to testify if the trial of this action is held in New York, given Justice Murphy's observation that:

"Very often the difference between liberty and imprisonment in cases where the direct evidence offered by the government and the defendant is evenly balanced depends upon the presence of character witnesses. The defendant is more likely to obtain their presence in the district of his residence .... The inconvenience, expense and loss of time involved in transplanting these witnesses to testify in trials far removed from their homes are often too great to warrant their use. Moreover, they are likely to lose much of their effectiveness before a distant jury that knows nothing of their reputations."

*U.S. v. Johnson,* 323 U.S. 273, 279, 65 S.Ct. 249, 252, 89 L.Ed. 236 (1944) (Murphy, J., concurring). *See also, U.S. v. Posner,* 549 F.Supp. 475, 477–78 (S.D.N.Y.1982); *U.S. v. Aronoff,* 463 F.Supp. 454 (S.D.N.Y.1978).

lie, and the actual outcrops of those coal seams. The Court, however, after having recently presided over the trials of two similar actions, wherein the Government introduced numerous demonstrative exhibits, and where neither the Government, nor the Defendants requested a jury view, attaches little, if any, significance to this fact.

## D. *Location of Documents.*

The Government maintains that "hundreds of thousands of documents and records gathered during a lengthy grand jury investigation" which culminated in the indictment at bar, as well as similar indictments,[17] are centralized in West Virginia. The Defendants' files and records, on the other hand, are in New York. Given the modern means of rapid transportation which are available to both the Government and the Defendants, the Court finds that this factor is of little concern. *See U.S. v. Posner,* 549 F.Supp. 475, 478 (S.D.N.Y. 1982); *U.S. v. Clark,* 360 F.Supp. 936, 943–44 (S.D.N.Y.) *mandamus denied sub nom. U.S. v. Griesa,* 481 F.2d 276 (2d Cir.1973).

## E. *Disruption of the Defendants' Businesses.*

The Defendants Hurwitz and Weitzen are name partners in the New York law firm of Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, which specializes in securities and tax law. Among the firm's clients are: State Street Bank & Trust Company, Integrated Resources, Inc., Clabir Corp., Union Corp., Southern Container Corp., Oppenheimer Management Corp., Coopers & Lybrand, as well as all of the independent directors of all of the Sears Roebuck/Dean Witter investment companies.[18] Hurwitz[19] and Weitzen[20] maintain that a West Virginia trial would be to their financial detriment, inasmuch as it would preclude them from being able to continue their lucrative practice of law during the evenings and weekends while the trial is in progress. The Defendants contend that a New York trial would greatly ameliorate this situation. The Government aptly responds, however, that "[n]o matter where the trial is located, Defendants will be inaccessible to clients during working [trial] hours and presumably will be assisting in

---

**17.** *See e.g.,* Indictment No. 83–20034 wherein Firestone is charged with a § 371 *U.S. v. Klein* [247 F.2d 908, 920 (2d Cir.1957) *cert. denied* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958)] conspiracy offense, as well as with twenty-nine substantive violations of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2. In that action, Firestone and his co-defendants did *not* seek a transfer, pursuant to *Rule* 21(b). Rather, they only sought a transfer to their respective home districts, pursuant to 18 U.S.C. § 3237(b). The Court, acknowledging its obligation to apply the law as it is enunciated by the United States Court of Appeals for the Fourth Circuit, *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 642 (4th Cir.1975), denied their § 3237(b) transfer motion on the basis of the Fourth Circuit's holding in *In Re U.S. (Nardone),* 706 F.2d 494 (4th Cir.1983). *See U.S. v. Firestone, et al.,* No. 83–20034 (S.D.W.Va. June 3, 1983).

The Government, assuming that the Supreme Court will approve of the Fourth Circuit's construction of 18 U.S.C. § 3237(b) in *Nardone* and that the Fourth Circuit will approve of this Court's application of *Nardone* to *Firestone,* argues that a transfer of this action to the Southern District of New York, pursuant to *Rule* 21(b), Federal Rules of Criminal Procedure, would place upon it the burden of having to

segregate the documents which are relevant to this prosecution, which would proceed in the Southern District of New York, from those which pertain to the prosecution of Criminal No. 83–20034, which will go forward in this district. Given the interwoven "relationships among Milton Dorison, Richard Firestone, Lance Eisenberg, David Hurwitz and Marc Weitzen" the Government maintains that this would be an "impossible" task.

The Court, perceiving that this concern on the Government's part would only be legitimate during the discovery phase of this action, finds that the Government's concern is obviated by defense counsel's representation that "for discovery purposes, ... [they] stand ready to review documents in West Virginia thus substantially eliminating any inconvenience to the Government." In transferring this action, *this Court respectfully requests that the transferee court hold counsel to their commitment in this regard.*

**18.** *See* Butowsky affidavit ¶ 2.

**19.** *See* Hurwitz affidavit ¶ 5.

**20.** *See* Weitzen affidavit ¶ 4.

their own defense in the evening hours." [21] Mindful that other courts have attached significant weight to this factor,[22] the Court nonetheless finds that this factor is neutral [23] with respect to these Defendants' [24] *Rule* 21(b) motion.

### F. *Expense to the Parties.*

The Defendants maintain that a West Virginia trial would be significantly more expensive for them than a New York trial, inasmuch as they would be forced to incur substantial expenses for hotel lodging, restaurant fare, long-distance phone calls to maintain contact with their offices, clients and families, weekend transportation to and from their homes in New York, as well as the expenses of creating a West Virginia trial office and of retaining local counsel. The Government responds [25] that the Defendants Hurwitz and Weitzen are men of substantial wealth who can easily afford to stand trial in West Virginia, and that it would be far less expensive for Hurwitz to maintain his Nashville counsel in Charleston than in New York City. Inasmuch as neither the Government, nor the Defendants, have submitted any affidavits which address this factor in anything other than speculative and conclusory terms, the Court has assigned no weight to this factor. *Cf., U.S. v. Posner*, 549 F.Supp. 475, 478–79 (S.D.N.Y.1982).

### G. *Location of Counsel.*

The Defendants Weitzen and Firestone are represented by New York counsel, while Hurwitz has retained the services of a Nashville attorney who has been working closely with Weitzen's lawyers and who

would be able to utilize their offices and facilities if the trial of this action were held in New York. The Government's lead trial counsel is Samuel L. Strother, who resides in Washington, D.C. Inasmuch as Mr. Strother is a former West Virginian, he has expressed the understandable preference that the trial go forward in this district. The fact remains, however, that Mr. Strother will have to travel regardless of whether the Defendants are tried here, or in New York. The Court finds, therefore, that this factor strongly supports the Defendants' motion for a transfer to the Southern District of New York.

### H. *Relative Accessibility of Place of Trial.*

Mindful of the location of the witnesses and counsel, Parts III B and G, *supra*, the Court finds that this factor militates in favor of a transfer to New York.

### I. *Docket Condition of Each District.*

Since the enactment of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, the Court perceives that this is no longer an appropriate factor for consideration in a *Rule* 21(b) analysis. *See U.S. v. Bein*, 539 F.Supp. 72, 75–76 (N.D.Ill.1982).

### J. *Special Elements Affecting a Transfer.*

The Defendants maintain that a transfer to the Southern District of New York would further the constitutional policy of "trial in the vicinage." *Cf., U.S. v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944). As previously noted,[26]

---

**21.** *See* Government's Memorandum of Law in Response at p. 14.

**22.** *See e.g., U.S. v. Bein*, 539 F.Supp. 72, 74–75 (N.D.Ill.1982); *U.S. v. Haley*, 504 F.Supp. 1124, 1128 (E.D.Pa.1981); *U.S. v. Aronoff*, 463 F.Supp. 454, 459 (S.D.N.Y.1978).

**23.** In making this determination, the Court has discounted the Defendants' contentions that a West Virginia trial would also disrupt the business activities of *other* members and employees of the Gordon Hurwitz law firm who would be called to testify. *See* Butowsky affidavit, ¶¶ 3–5.

The Court has already weighed this concern, to the extent that it perceives it to be a legitimate factor in its analysis, in Part III B, *supra*.

**24.** Only Hurwitz and Weitzen have seen fit to advance arguments, and to submit affidavits which pertain to this factor.

**25.** The Government has not seen fit to address the additional expenses, if any, which a New York trial would impose upon it.

**26.** *See,* note 12, *supra*.

however, venue over Count One is clearly appropriate in this district, notwithstanding that the "center of gravity" of the alleged conspiracy appears to be in New York. The Court finds, therefore, that the Defendants have not raised any legitimate "special elements."

The Government, on the other hand, argues that the Court should deny the Defendants' transfer motion because they chose to tie up West Virginia coal properties in furtherance of their allegedly bogus tax shelters. The Court does not deem this to be an appropriate factor for the Court to consider, inasmuch as it does not bear upon "the convenience of the parties and witnesses, ... [nor] the interest of justice."

Even though the parties have *not* raised the issue, the Court, mindful of the fact that the coal industry is the backbone of the local economy, has considered the "possibility" that a West Virginia jury might be able to better understand the issues raised in Count One which alleges that the Defendants conspired to defraud the United States by structuring bogus tax shelters, using coal as the investment medium. The Court finds, however, that this "possibility" does not preclude the transfer of Count One to the Southern District of New York, given its analysis of the other *Platt* factors, as discussed above, and inasmuch as it is convinced that a jury which is drawn from the populace of the Southern District of New York, which comprises the nation's principal commercial and financial center, will be more than able to determine the Defendants' guilt or innocence of the alleged conspiracy.

After having balanced all of the factors enumerated above, the Court finds that further prosecution of the within remaining single-count indictment in this district would result in a substantial inconvenience to both the Defendants and their counsel, as well as to the potential witnesses, and that fundamental fairness requires the transfer of this action to the Southern District of New York, wherein a trial would be significantly less burdensome. Accordingly, the Court hereby grants the Defend-ants' motion for a transfer of Count One to the Southern District of New York, pursuant to *Rule* 21(b), Federal Rules of Criminal Procedure.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.