**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FERMAN A. TRAVERS,
Plaintiff-Appellant,

v.                                                              No. 98-1671

COMPUTING ANALYSIS CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-97-812-A)

Submitted: February 26, 1999

Decided: May 7, 1999

Before WIDENER and WILKINS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Melvina C. Ford, THE LAW OFFICES OF MELVINA C. FORD,
Alexandria, Virginia; Eric Steele, THE LAW OFFICE OF ERIC
STEELE, Washington, D.C., for Appellant. Burton J. Fishman, Jill I.
Prater, TUCKER, FLYER & LEWIS, P.C., Washington, D.C., for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this action, Ferman Travers contended that his former employer, Computing Analysis Corp. (CAC), failed to promote him and subsequently terminated him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e-5 (1994). Travers also alleged that his discharge constituted a breach of a settlement agreement with CAC. The district court did not consider Travers' opposition to CAC's motion for summary judgment and, on the basis of the unopposed summary judgment motion, entered judgment for CAC. We affirm.

I

CAC hired Travers as a computer operator in April 1993. In June 1994 he applied for promotion to the position of Junior Network Analyst. The other applicant for the position was Cindy Sellers, a white female who, like Travers, was a computer operator with CAC. She received a significantly higher overall score than Travers on a racially neutral evaluation form and was selected for the position in September 1994.

Travers claimed that her selection was racially motivated, filed an internal EEO complaint, and threatened litigation. As a result of his threats, CAC offered to promote Travers to Junior Network Analyst on a probationary basis, with Travers having the option of returning to his former job as a computer operator if he was unsuccessful in his new position. Travers accepted this offer in November 1994.

Travers' performance in his new position was substandard. He made repeated and costly errors, his attendance record did not improve, he was rude to customers, and he was uncooperative with other CAC employees. In June 1995, Travers was fired.

2

After Travers filed his complaint alleging race discrimination in violation of Title VII and breach of contract, CAC moved for summary judgment. The certificate of service states that the motion was served on Travers' two attorneys on Friday, March 20, 1998. Travers' lead attorney, Eric Steele, was served at his office in Washington, D.C., and Melvina Ford was served at her office in Alexandria, Virginia.

Under E.D. Va. Local R. 7(E)(1), Travers had eleven days from service of the summary judgment motion to file his opposition to that motion. Assuming that service was properly effected in accordance with Fed. R. Civ. P. 5(b) on March 20, Travers' opposition to the motion should have been filed on March 31. However, Travers did not file his opposition until Friday, April 3. Accompanying the opposition were a motion for extension of time to file the opposition and Travers' declaration in support of the opposition. None of these documents was signed by Steele, Ford, or Travers, but by someone with the initials "MCW." Travers does not refute CAC's averment that this person is not an attorney.

The district court denied the motion for extension of time to file the opposition to the summary judgment motion. This denial precluded consideration of Travers' opposition. The district court therefore granted judgment to CAC on the basis of the unopposed summary judgment motion. Subsequently the district court granted CAC's motion to strike from the record the motion for extension and the opposition, because the documents were filed out-of-time and without a proper signature.**1**

II

Travers contends, and CAC does not deny, that CAC improperly served Steele by leaving the summary judgment motion at Steele's office after the close of business on Friday, March 20.**2** Steele did not

_____

**1** In order to evaluate Travers' argument that the district court erroneously failed to consider his opposition to the motion for summary judgment, we obtained from the district court the stricken motion for extension, opposition, and Travers' declaration.

**2** Service of pleadings must be by mail or by delivering the pleading to an attorney. "Delivery . . . means: handing it to the attorney . . .; or leav-

3

discover the motion until Monday, March 23. If the eleven-day period of Local R. 7(E)(1) began running on March 23, when Steele first saw CAC's motion, Travers' opposition would have been timely filed on Friday, April 3. Travers also acknowledges that the motion for extension, the opposition, and the declaration were not signed in accordance with Fed. R. Civ. P. 11, but argues that this is a mere technical defect.

We conclude that Travers should have filed the opposition by March 31 and that the district court therefore correctly did not consider it when addressing CAC's motion for summary judgment. First, in the motion for extension of time, Travers concedes that the opposition was "apparently" due on March 31. Only on appeal does he argue --for the first time--that the defective service extended the due date to April 3. He thus failed to preserve this argument because he did not present it to the district court. Second, Travers had two attorneys, Steele and Ford. The certificate of service states that CAC served Ford and Steele--both counsel of record--on March 20. Travers has not controverted that Ford was served in accordance with Rule 5(b). When a party is represented by more than one attorney, proper service upon any one of them satisfies the requirements of Rule 5. See Buchanan v. Sherrill, 51 F.3d 227, 228 (4th Cir. 1995).[3]

III

After a de novo review of the record, including the unopposed summary judgment motion, we conclude that Travers failed to carry his burden under Title VII of establishing race discrimination in connection with either his not being promoted or his discharge. Nor did he establish a prima facie case of retaliatory discharge under Title

_____

ing it at the attorney's . . . office. . .; or, if the office is closed . . ., leaving it at the person's dwelling house or usual place of abode. . . ." Fed. R. Civ. P. 5(b).

[3] Having concluded that the tardy filing of the opposition to the motion for summary judgment justified treating CAC's summary judgment motion as unopposed, we do not address Travers' assertion that the defective signatures on the motion to extend, the opposition, and the declaration did not warrant striking those pleadings.

VII. Finally, because he suffered no monetary damages as a result of his termination, his breach of contract claim fails as a matter of law.

Title VII Claims

In this case there was no direct evidence to support Travers' claims of race discrimination in violation of Title VII. He therefore had to rely on the indirect, burden-shifting method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of discrimination. See id. at 802. Establishing a prima facie case gives rise to an inference of discrimination, and the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. See id. at 802-804. The defendant's burden is one of production, not persuasion. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274-75 (4th Cir. 1995). If the defendant provides evidence of a non-discriminatory reason for its action, the plaintiff, who "bears the ultimate burden of persuasion," must show, by a preponderance of the evidence, that the proffered reason was a pretext for discrimination. See id. at 275.

Assuming that Travers established a prima facie case of race discrimination in promotion, see Brown v. McLean , 159 F.3d 898, 902 (4th Cir. 1998), CAC set forth a legitimate, non-discriminatory reason for its selection of Sellers over Travers. Sellers received a substantially higher score on the racially neutral evaluation form and was therefore deemed the more qualified candidate. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). Travers did not rebut this showing of a legitimate, non-discriminatory reason for CAC's decision.

Travers failed to establish a prima facie case of race discrimination in connection with his discharge. His performance at the time of his termination did not meet CAC's legitimate expectations. See Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989). Indeed, the record is replete with documentation of his chronic absenteeism and tardiness, his ineptitude, and his attitude problems.

Finally, Travers' claim that he was fired in retaliation for filing an internal EEO complaint following Sellers' promotion has no merit. Travers utterly failed to show a causal connection between his pro-

5

tected activity and his discharge. See Causey v. Balog, 162 F.2d 795, 803 (4th Cir. 1998).

Breach of Contract

On November 18, 1994, Travers accepted CAC's offer to settle his EEO complaint. Under the terms of the offer, Travers was to be promoted with the understanding that "[i]f Ferman's performance . . . is evaluated as less than satisfactory, he will be given the option to return to the Operations group or leave the company." Travers contends that, by discharging him rather than returning him to his former position, CAC breached this agreement.

In order to recover damages in Virginia for breach of contract, injury must be established. See Fried v. Smith , 421 S.E.2d 437, 439 (Va. 1992). Here, Travers cannot show injury resulting from his discharge. Had he returned to his former job as a computer operator, his salary would have been $22,800 per year. After his discharge, he secured employment with another company at a salary of $30,000 per year. Even though he was out of work for a short while, his significantly higher salary at his new employer more than made up for any salary loss at CAC. Therefore, Travers failed to establish any injury flowing from the claimed breach of contract.

IV

We accordingly affirm the judgment of the district court. We grant CAC's motion to submit the case on the briefs and dispense with oral argument because the facts and legal contentions are fully presented in the materials before us and argument would not aid the decisional process.

AFFIRMED