**UNITED STATES of America, Plaintiff,**

v.

**Calvin BEIN, et al., Defendants.**

**No. 80 CR 612.**

United States District Court,
N. D. Illinois, E. D.

Jan. 5, 1982.

Victoria J. Meyers, Daniel W. Gillogly, Asst. U. S. Attys., Chicago, Ill., for plaintiff.

Barry M. Fallick, Rochman, Platzer & Fallick, New York City, for defendant Al Vitti.

Bradley G. Razook, Gusrae, Kaplan, Lowy, Bruno, Freedman & May, New York City, for defendant Calvin Bein.

Gary Naftalis, Lawrence S. Robbins, Kramer, Levin, Nessen, Kamin & Soll, New York City, for defendant Thomas DeAngelis.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Three of the defendants (Calvin Bein, "Bein"; Thomas DeAngelis, "DeAngelis"; and Al Vitti, "Vitti") in this seven-defendant, 20-count criminal proceeding have moved under Fed.R.Crim.P. ("Rule") 21(b) for transfer to the Southern District of New York. For the reasons stated in this memorandum opinion and order, their respective motions are granted.[1]

---

1. Bein and DeAngelis have also filed a number of other motions. Most fall in areas in which the trial court is given broad discretion. In some the controlling case law in this Circuit appears to differ materially from that in the Second Circuit. In one (Bein's motion for severance under Rule 14) the relevant considerations may be modified (at least in part) by the transfer of this proceeding as to some but not all defendants. For all these reasons this Court, despite having given full consideration to the motions (together with like motions of

*Facts* [2]

From September 1979 to March 1980 Bein was President, DeAngelis Treasurer and Vitti one of the sales managers of E–K Capital Corporation ("EKCC"). EKCC was engaged in the sale of illegal commodity option contracts characterized by defendants as "Deferred Delivery Contracts." Defendants falsely represented EKCC to be a well-established reliable company dealing in actual physical precious metals and in precious metals contracts.

At the heart of the scheme was the false representation to prospective customers:

> that by paying a certain fee to EKCC they could purchase "deferred delivery contracts," which would give them "control" of a specified quantity of metal for a specified period of time, at a specific price, called the "strike price;" that the strike price would be determined by the market price of the metal at the time EKCC received the customer's funds; and that if during the life of the contract the price of the metal rose above the strike price the client could either purchase the metal at the strike price or receive his profit from EKCC after EKCC "liquidated" the contract. . . .

Instead defendants employed a number of fraudulent means to avoid returning the contract profits to customers as to whom the market price of the metals had in fact advanced during the contract term. Defendants diverted the funds to their own use and benefit and for other purposes.

In the course of their activities defendants caused interstate wire communications to be transmitted (the wire transfer of customer funds). Bein and DeAngelis also executed commodity option transactions (prohibited by the Commodities Exchange Act).

the other non-transferred defendants), has elected to defer to the judgment of the transferee Court.

**2.** This section draws its background "facts" from the indictment. Hence no findings of fact are made or implied, even though for convenience the statements are made affirmatively rather than with the constant repetition of such terms as "alleged" or "charged." Other facts—in the real sense of the word—are stated in the several sections of this opinion.

*Considerations Relevant Under Rule 21(b)*

Rule 21(b) speaks in terms identical to those employed by its civil counterpart, 28 U.S.C. § 1404(a): Transfer may be made "for the convenience of parties and witnesses, and in the interest of justice." However the expression of the relevant considerations under Rule 21(b) has been somewhat different:

(1) location of defendant,

(2) location of possible witnesses,

(3) location of events likely to be in issue,

(4) location of documents and records likely to be involved,

(5) possible disruption of defendant's business if the proceeding is not transferred,

(6) expense to the parties,

(7) location of counsel,

(8) relative accessibility of the place of trial, and

(9) docket conditions of each district.

Any other "special elements" can be considered as well.[3]

### 1. *Location of Defendants*

All three movants live in New York. *Platt*, 376 U.S. at 245–46, 84 S.Ct. at 772 described the impact of that factor:

> The fact that Minnesota is the main office or "home" of the respondent has no independent significance in determining whether transfer to that district would be "in the interest of justice," although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel.

**3.** *See Platt v. Minnesota Mining Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964). Although *Platt* never really decided whether those factors are appropriate, they have since become well-settled and all courts cite to *Platt. See e.g., United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979); *United States v. Testa*, 548 F.2d 847, 856–57 (9th Cir. 1977).

That statement scarcely justifies the Bein-DeAngelis-Vitti effort to paint residence as a "crucial" factor, a characterization not well supported in the case law. Rather the situation is best summed up "residence [is] a factor to be considered but not the controlling factor...." *Jones v. Gasch*, 404 F.2d 1231, 1240 (D.C.Cir.1967). For whatever it *is* worth, this factor clearly weighs for defendants.

2. *Location of Possible Witnesses*

DeAngelis has stated that all of his witnesses are in New York. There seem to be at least ten. Bein has submitted a list of 24 witnesses, all from New York. Vitti has simply joined in the others' motions.

In response the government estimates the location of its 40 witnesses:

 (a) 15 in New York;

 (b) 4 somewhere east of Ohio;

 (c) 21 in Illinois or west of Ohio.

Thus the government's witnesses split almost 50–50 (21–19) if Ohio were viewed as a dividing line.

Whenever a balancing of factors is undertaken, that figure of speech tends to transform the process into a kind of mechanical counting procedure (unlike the more familiar "weight of authority" determination, where the metaphor does not foreclose a qualitative evaluation of the cases being considered). It is really impossible, without conducting a kind of pre-trial mini-trial, to evaluate the significance of the prospective witnesses to see in what direction this factor points. Nonetheless it too seems to favor transfer.

3. *Location of Events Likely To Be in Issue*

There is no doubt that the entire EKCC operation was centered in New York. EKCC was a New Jersey corporation headquartered in Manhattan. All the defendants were or are from the New York metropolitan area. Telephones used to accept orders were in New York. New York counsel and a New York accountant advised EKCC. Brochures explaining its business were printed in and mailed out from New York. All funds—including the wired funds charged in the indictment—were received in New York, and a New York bank handled EKCC's accounts. Whatever commodities transactions EKCC actually engaged in were largely carried out in New York.

As against all this the government points to two Illinois-based events:

 (a) victims were solicited (apparently by telephone) here;

 (b) victims wired funds from here.

It may be true as defendants assert that *more* victims were from the New York metropolitan area than from Illinois (32 against about 22, out of EKCC's 400-odd customers). But venue *is* properly laid in this district, and the government has prepared its case with the victims (mostly from Illinois) identified in the indictment. Defendants cannot compel the government to try the case as defendants would prefer.

Thus the impact of this factor is not nearly so one-sided as Bein-DeAngelis-Vitti would have it. Nevertheless the "events likely to be in issue" do appear to favor a New York forum by at least a small margin. *Accord*, such cases as *United States v. Alter*, 81 F.R.D. 524 (S.D.N.Y.1979).

4. *Location of Documents and Records*

Most of the EKCC documents and records are now in Chicago, but this is a result of the government having seized them in New York and bringing them here. Two things are clear:

 (a) It would be grossly unfair to permit the government to "create" venue, or to alter the balance of relevant considerations, simply by shipping documents.

 (b) Documents moved here can just as easily be moved back to New York, or photocopies may be shipped there.

This factor must therefore be viewed as essentially neutral. It thus drops out of the equation.

5. *Disruption of a Defendant's Business*

(a) *DeAngelis*

DeAngelis and his wife operate a fledgling personnel agency. Just as defendants

cannot compel the government to try this proceeding their way, so the government cannot prevail in its unsupported assertion that DeAngelis' wife (mother of a year-old daughter) can run the business just as well in his absence (an argument controverted by the affidavit of DeAngelis' New York lawyer).

Clearly this factor weighs strongly in favor of transfer as to DeAngelis. This is especially true because of the likelihood of a lengthy trial.

#### (b)–(c) *Bein and Vitti*

Neither of these defendants has mentioned anything specific (Vitti has not even submitted a separate brief). So it must be assumed that no business will be hurt as to either of them. This factor then would tend to weigh in the government's favor.

### 6. *Expense to Parties*

There is no doubt that a Chicago trial will greatly increase defendants' costs (DeAngelis estimates an extra $20,000 as to him; Bein, an extra $50,000). In response the government speaks of the expense of bringing witnesses to New York. But given the almost even split of the government's own witnesses, it is difficult to evaluate any cost differential to the government. Much the same is true as to the expense of government lawyers, who may or may not be required to travel to New York if the proceedings are transferred (see the next section). Although this factor is not susceptible to precise definition, it too appears to favor transfer.

### 7. *Location of Counsel*

All three defendants (understandably because they themselves are New Yorkers)

have New York lawyers as their principal or only counsel. As for the government, it states that the two Assistant United States Attorneys now assigned to the case "would most likely not travel to New York to try the case" (again volunteering to shape government handling of the matter, defendants say that government counsel from Chicago can handle the New York proceeding).[4]

Contrary to defendants' contentions, the convenience of government counsel *is* a relevant factor.[5] But many of the cases cited by the government involved transfer motions on the eve of trial (*e.g. Keuylian, Testa*). In view of the complexity of this case and the fact that transfer has been occasioned by defendants' motion, a finding of Speedy Trial Act excludable time under 18 U.S.C. § 3161(h)(8) would seem to be unexceptionable and to minimize that consideration.

This factor poses a close call, but the Court gives a slight edge to defendants. While the government has New York counsel available, defendants do not have an equivalent call on Chicago counsel.[6]

### 8. *Relative Accessibility of Place of Trial*

This factor drops out of consideration where, as here, two major metropolitan areas are involved.

### 9. *Docket Condition*

Here too (especially in light of the Speedy Trial Act, enacted since *Platt*) there is nothing either way. Defendants and the government agree this is not a factor.

---

4. If the Speedy Trial Act forces the case to trial here as to the four remaining defendants at anything near the same time as the New York trial of Bein, DeAngelis and Vitti, the government's position is clearly persuasive. In any case the decision is of course for the government not defendants to make.

5. From the government's memorandum it appears that the Securities and Commodities Fraud Unit in Manhattan is seriously understaffed and overburdened.

6. Bein asserts with considerable force that he has enough funds to retain the most experienced counsel at his home base but could not do the same after making the other expenditures attendant on defending far from home (he disavows any *in forma pauperis* prospects). That situation may arguably implicate Sixth Amendment considerations.

**10.** *Special Elements*

**(a)** *DeAngelis*

DeAngelis notes that he is subject to a related criminal indictment in the New York state courts.

**(b)** *Bein*

Bein submits a doctor's letter describing a medical condition that imposes severe dietary restrictions. It would be much more difficult for Bein to subsist on restaurant food for a long period of time than if he were able to live at home.[7]

**(c)** *Government*

One of the government's strongest points is that granting the motion to transfer will split this trial. Judicial economy would be disserved, and it will certainly be far more inconvenient for witnesses forced to testify twice. That did not preclude the partial transfer in *United States v. Aronoff*, 463 F.Supp. 454 (S.D.N.Y.1978), but the government urges "that such a result should not be repeated."

This Court has considerable empathy for the government's concerns, but they are after all the product of the government's decision to bring the indictments here in the first place. Had the natural center of gravity—New York—been chosen, none of the defendants who now disavow the transfer motions could have moved for transfer away from the Southern District of New York (all are themselves New Yorkers). There would have been no prospect of a split trial.

*Conclusion*

*Alter* is the case closest to this one, and it decided on transfer to the home base of the fraudulent boiler shop operation. Other cases illustrating the balancing of factors and ordering transfer are *Aronoff* (resulting, as already observed, in a split trial); *United States v. Haley*, 504 F.Supp. 1124 (E.D.Pa.1981); *United States v. Gruberg*, 493 F.Supp. 234 (S.D.N.Y.1979).

**7.** Without questioning the bona fides of that assertion, the Court does not give it much

Were it not for the splitting of the proceeding, transfer would unequivocally be indicated. And even on that score each defendant has rights that cannot fairly be subordinated to the decision of his co-defendants to resist transfer (or put another way, to the government's choice of a less appropriate forum in the first instance).

Accordingly this proceeding is transferred to the United States District Court for the Southern District of New York as to each of defendants Bein, DeAngelis and Vitti. Bein's and DeAngelis' other motions remain to be considered by the transferee judge.