**UNITED STATES of America, Plaintiff,**

v.

**Jack RINGER, Herbert Stone, Raphael Bloom, Sam Sarcinelli, Alan Scop, and Gary Brustein, Defendants.**

**No. 86 CR 541.**

United States District Court, N.D. Illinois, E.D.

Oct. 9, 1986.

On Motion for Reconsideration Oct. 20, 1986.

Burton H. Finkelstein, Finkelstein, Thompson, Levenson & Lewis, Washington, D.C., Scott R. Lassar, Karon, Morrison & Savikas, Ltd., Chicago, Ill., for Jack Ringer.

Marc R. Kadish, Clinical Associate Professor, ITT Chicago Kent College of Law, Chicago, Ill., for Herbert Stone.

Michael D. Sher, Neal, Gerber & Eisenberg, Chicago, Ill., for Raphael Bloom.

Richard Kling, ITT Chicago Kent College of Law, Chicago, Ill., for Alan Scop.

Franklyn H. Snitow, Snitow and Pauley, New York City, for Gary Brustein.

Mitchell Mars, Sp. Atty., U.S. Dept. of Justice, Chicago, Ill., for government.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Defendants in this criminal securities fraud case have filed a number of pre-trial motions before this court. For the reasons articulated below, the motion to transfer to the United States District Court for the Southern District of New York is granted. Consideration of other pending matters is therefore deferred to the judgment of the transferee court.

### FACTS

The indictment alleges the following facts: In August, 1979, European Auto Classics, Ltd. was organized and incorporated in New York for the purpose of selling antique, classic, and foreign automobiles to the public. Although its offices and showrooms remained in Great Neck, New York, the company was basically reincorporated in January, 1980 in Delaware. A month later, it undertook its first and only public securities offering; the fifty million shares offered, sold at a price of a penny each, raised $500,000 for the company. Sometime in early April, this stock began trading in the Over-the-Counter ("OTC") market.

The securities fraud, mail fraud, and conspiracy charges brought here [1] concern the defendants' intentional failure to disclose material information in the public offering circular filed with the Securities and Ex-

---

**1.** Two other counts charge defendants Bloom and Stone with perjury before the Grand Jury during their testimony concerning these matters.

change Commission and other communications in an effort to illegally manipulate the post-offering price of European Auto stock in the OTC market. This manipulation was effected, the government contends, through a variety of means including, but not limited to, distribution of the misleading offering circular, buying and selling stock through undisclosed nominee accounts,[2] and urging others, by means of material misstatements or omissions, to buy the stock. Many of these sales were not registered with the SEC.

By the time the company was liquidated in 1984 by the State of New York for failure to pay outstanding sales taxes, European Auto stock had traded in at least 29 states. *See* Government's Response to Motion to Transfer at 3. On July 22, 1986, the Government filed the grand jury's indictment in this district.

### Discussion

Rule 21(b) of the Federal Rules of Criminal Procedure states that a court may, upon motion of the defendant, transfer a proceeding to another district if such action is "[f]or the convenience of parties and witnesses, and in the interests of justice." In evaluating whether transfer is proper in a given case under this standard, district courts have looked to the considerations set forth, if not explicitly approved, by the Supreme Court in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964):

1. location of the defendants;
2. location of possible witnesses;
3. location of events likely to be in issue;
4. location of documents and records likely to be involved;
5. disruption of defendant's business which might occur absent a transfer;
6. expense to the parties;
7. location of counsel;
8. relative accessibility of the place of trial;
9. docket conditions of the districts involved; and,
10. any other special factors which might affect transfer.

*Id.;* See 8A *Moore's Federal Practice* ¶ 21.04[2] (and citations contained therein.) Although no one factor alone is determinative, courts have considered the the disruption of defendant's business and the location of witnesses, events, and records to be most important. *Id; cf. United States v. Zylstra*, 713 F.2d 1332, 1337 (7th Cir.1983).

1. Location of the Defendants.

Although this factor has "no independent significance in determining whether transfer ... would be 'in the interest of justice,'" *Platt*, 376 U.S. at 245, 84 S.Ct. at 772, it points, for the little it adds here, toward transfer. With the exception of Mr. Sarcinelli, each of the defendants currently resides in the New York metropolitan area and has moved to transfer the case to New York. The government anticipates that Sarcinelli, who is currently in custody, will enter a guilty plea and testify for the prosecution.

2. Location of Witnesses.

The Government argues that because it intends to call approximately 20 victims of the criminal acts from the Chicago area as witnesses, transfer is improper. At the same time, it contends that "a bare assertion" by the defendants that a large number of witnesses will be needed at trial is not sufficient to meet their burden under Rule 21(b). Finally, the Government also suggests that defendant's could choose their expert witnesses from the Chicago area and calls to this court's attention its power to limit character testimony.

I find these arguments completely unpersuasive. First, by the Government's own count, it intends to call to the stand approximately 20 Chicago-area victims of the fraud, between 15 and 20 New York residents, and 6 to 10 others from California or

---

**2.** An undisclosed nominee account, according to the indictment, is a brokerage account in which beneficial ownership of securities held therein is not fully disclosed.

Nevada. This count alone, when the Government's contention that Chicago is more convenient than New York for California and Nevada residents is ignored, suggests that this case might have been brought as easily in New York as here.

Once the potential witnesses of the defense are added to the scale, this factor also points toward transfer. Defendants state, by way of affidavit, that they each intend to call witnesses, all of whom reside in New York and some of whom may refuse to appear in Chicago.[3] Just as this court cannot ask why the Government relies on Illinois victims when it had possibly 28 other states to choose from, I will not probe into defendants' reasons for retaining New York experts, especially as the Government has not presented any logic or authority suggesting that such inquiry is proper.

### 3. Location of Events Likely to Be In Issue.

Even a cursory glance at the indictment demonstrates that this factor calls for transfer. Despite an apparent effort on the Government's part to insert the word "Chicago" wherever it could into the indictment, almost every fact alleged either took place in New York or was directed from there by defendants. The solicitation efforts cited by the Government all appear to have occurred "in the Chicago area and elsewhere." Indictment at ¶ 29.[4] They were, as the Government more candidly admits in its brief, carried out on a nationwide basis. Indeed, the only unique nexus to Chicago involved the receipt from and matching of five purchase orders of European Auto stock for Chicago area residents; these orders were filled from New York. All this is not to imply that venue in this district is improper. It does suggest, however, that it would be more convenient to try this case in New York. *See United*

*States v. Bein*, 539 F.Supp. 72, 74 (N.D.Ill. 1982).

### 4. Location of Documents and Records.

The Government states that during its investigation of this case, thousands of documents were received via subpoena from Chicago, California, New York, and elsewhere. Given the relative insignificance of California and Chicago events in this case as judged by the indictment, I assume that most of these came from New York. To this end, I agree with Judge Shadur that "[t]wo things are clear:

(a) It would be grossly unfair to permit the government to "create" venue, or to alter the balance of relevant considerations, simply by shipping documents.

(b) Documents moved here can just as easily be moved back to New York, or photocopies may be shipped there.

*Bein*, 539 F.Supp at 74. Nevertheless, the court recognizes that the documents are already here. I must also acknowledge that the documents defendants state they intend to rely on at trial, the records of European Auto and the files of the trading companies in which several of the defendants were employed, are currently located in New York. Considering these facts, I believe this factor is inconclusive and therefore "drops out of the equation." *Id.*

### 5. Disruption of Defendants' Business.

Neither party here anticipates a short trial. The Government estimates its own case will take three weeks and the defense has estimated the trial will last between four and six weeks. While it may be true that any criminal prosecution, wherever it is brought, is "inconvenient" for the accused, it is not unreasonable to assume that a long trial far from a defendant's place of business may jeopardize his or her livelihood. Indeed, this fact is recognized by the very existence of this *Platt* factor. I cannot, therefore, cavalierly dismiss, as

---

**3.** To this end, I note that local counsel have offered to submit witness lists for *in camera* review as soon as they are complete. Defendants' Memorandum in Support of Motion to Transfer, at 4, n. 2.

**4.** Although ¶ 31 appears to allege an act directed solely to the Chicago area, a reading of ¶ 29 shows this inference to be wrong.

the government would have me do, defendants' claims as "self-serving and unsubstantiated." Government's Response to Motion for Transfer, at 8. Indeed, it seems to me that the individual business situations of the defendants, when taken as a whole, strongly suggest the appropriateness of transfer to New York.

### A. Jack Ringer.

By his affidavit, Ringer states that he is owner and manager of a tiny venture capital firm in New York city. Although lacking factual specificity, I find no reason to doubt his assertion that "it will be difficult for the company to operate effectively in my absence." I therefore believe this case points weakly toward transfer. Ringer Aff. at ¶ 2.

### B. Herbert Stone.

More compelling is the case of Stone. Apparently as a result of the charges filed against him, he lost his job with the securities firm he had been with for nearly fifteen years. Under the arrangement with his present employer, his ability to generate income is "entirely dependent upon my own activities.... [W]hen I am not there, I cannot earn a dime and no one covers for me." Stone Aff. at ¶ 2. Stone's contention that he needs to devote whatever time he can at his trading desk to maintain customer confidence, especially in light of his current situation, is believable. While it is unclear how much work, given the trial, Stone could accomplish, it is clear that he stands a much better chance of maintaining his rather precarious situation if the trial were in New York. *Id.; See also* Memorandum in Support of Motion to Transfer at 10–11. These facts point strongly toward transfer.

### C. Raphael Bloom.

Bloom is self-employed and operates a financial public relations firm. Because he has not alleged any specific detriment to

his business from a Chicago trial, his case tends to weigh in the Government's favor.

### D. Sam Sarcinelli.

As noted above, Sarcinelli is not expected to be a defendant in this trial. His situation, therefore, is not relevant to this court's consideration of the motion for transfer.

### E. Alan Scop.

Scop is the owner and president of a New York securities firm with only seven employees. He is responsible for execution of all orders and trades and for making all risk decisions. Given this, he states his absence from New York would cause his company to cease operations and risk loss of both clients and substantial amounts of money. Scop Aff. at ¶ 2. These facts, like Ringer's and Stone's, point toward transfer.

### F. Gary Brustein.

The president of European Auto before its collapse, Brustein is now in charge of the day-to-day operations of a financially-troubled car business. These daily responsibilities include meeting with customers and supervising sales staff. He states that his absence from the showroom would be devastating to the business, as well as his personal income. Brustein Aff. at ¶ 16. Because Brustein could meet with staff and customers in the evenings were the trial held in New York, his situation likewise suggests transfer.

### 6. Expense to the Parties.

The court agrees with the Government that a proper analysis of this factor cannot disregard the expenses the United States would incur if the prosecution were transferred. By its own estimate, three attorneys, two agents, and voluminous records would have to be sent to New York for the duration of the trial.[5] I believe these costs

---

**5.** Given budget restraints which might prevent the Chicago trial team from traveling to New York, the Government notes that transfer would force its counsel in the Southern District of New York to master and try the case "without the benefit of the investigators most familiar to it."

are balanced out by the expenses the five defendants would bear if the case were tried in Chicago.[6] Accordingly, this factor is inconclusive.

### 7. Location of Counsel.

Because this motion is not brought on the eve of trial, the importance of this factor for either side is minimal, *Bein*, 539 F.Supp. at 75, although it takes on greater significance for the Government, whose Chicago counsel have spent a great deal of time investigating this case. For whatever it is worth, I note that Brustein has retained a New York attorney and Ringer's primary counsel is from Washington, D.C. Stone, presently represented by court appointed counsel, prefers his New York attorney who is already familiar with his securities practice. Defendants further suggest that were this case tried in New York, Scop, who is also presently represented by an attorney here, would retain his long-time New York lawyer. Memorandum in Support of Motion to Transfer, at 14, n. 5. Bloom's lawyer is from Chicago. I believe these facts support the Government's efforts to retain the case in this district.

### 8. Relative Accessibility of Place of Trial.

As between Chicago and New York, this factor must be considered neutral. *See Bein*, 539 F.Supp. at 75.

### 9. Docket Conditions of Each District.

Since the enactment of the Speedy Trial Act, this factor also must be considered neutral. *Id.* While transfer might result in some delay in prosecution of the case, this court has been given no reasons to suggest that such delay would be prejudicial to either side or to the public.

### 10. Other Factors Meriting Consideration.

The Government has not raised any other issues for this court's attention. The defendants, on the other hand, have set forth numerous personal considerations they wish me to weigh in my decision on their motion. Because I feel that, in light of the discussion above, they have already met their burden of showing that transfer in this case is justified, I find no need to belabor the issue.

### CONCLUSION

For the reasons stated herein, the motion to transfer to the United States District Court for the Southern District of New York is granted.

It is so ordered.

### ON MOTION FOR RECONSIDERATION

The government has asked me to reconsider my October 9, 1986, order transferring this case to the United States District Court for the Southern District of New York. In support of this motion, the government has submitted several affidavits contesting defendants' sworn statements of hardship and expense respecting an extended trial in this district. It also strenuously reasserts its earlier position that "sound judicial administration ... suggest[s] that only and rarely for good cause should a prosecution be withdrawn by a judicial act from the court in which it was brought and probably from the direction and management of counsel who have prepared it." Gov. Petition for Reconsidera-

---

Of course, that is not entirely true. The Chicago team, if necessary, could be in constant telephone communication with the attorneys in New York. In any event, the Government's failure to mention the most obvious scenario—in which the lead Chicago prosecutor directs a New York trial team—seriously weakens the credibility of its argument.

As for the witness expenses mentioned by the Government, they are dealt with under the "location of witnesses' factor discussed above.

**6.** In addition to the costs for the defendants themselves, at least one defendant presently has New York counsel who must be brought to Chicago and provided with lodging and office space. Should Mr. Scop be able to secure counsel of choice, he will also face these tremendous costs. *See* Scop Aff. at ¶ 6. Should the case be transferred, on the other hand, the Government would incur only some of these costs.

tion at 8, quoting *United States v. Jones,* 43 F.R.D. 511, 514 (D.D.C.1967).

The motion is denied. The government has not presented any facts of which it was unaware at the time it filed its original memorandum in opposition to the motion for transfer. "Sound judicial administration" suggests that a party should not be given a "second bite at the apple" because it failed to treat seriously its opponent's motion the first time around. Absent newly found evidence, a failure on the court's part in interpreting or applying the law, or some other good reason, reconsideration motions will be denied. The government here has not met this burden.

Moreover, even considering the government's belated exhibits, I still believe that this transfer is "in the interest of justice." Fed.R.Crim.Pro. 21(b). Assuming that the government has succeeded in showing that Ringer's business would not be affected by trial in this district, a factor I originally found "point[ed] weakly toward transfer," the "new" evidence on Stone cuts the other way. While the court may have incorrectly presumed that Stone lost his job at Norbay because of the filing of this indictment, the government's facts suggest that his employment situation is perhaps even more precarious than the court originally thought. As for Whitten's statement that "it is the general practice in the securities industry" for salesmen to cover for each other, Whitten aff. at ¶ 9, it is insufficient to overcome Stone's sworn statement that, in his particular situation, no one will cover for him and he will be unable to earn income during his absence from the trading desk.

Finally, the government presents, for the first time, "other considerations" reflecting the "family, health, and community responsibilities and needs" of the government trial team, as well as special hardships imposed by transfer on two physically impaired potential witnesses. Because I specifically did not weigh in my original opinion the personal considerations urged upon me by defendants, I do not believe the personal hardships suffered by the government attorneys should be considered here. At best, these personal and family harms are speculative; were I to consider them in detail, however, they would probably cancel out or, given the evidence before the court, tip slightly in defendants' favor.

I have considerably more sympathy for the two disabled victims the government intends to call at trial. According to the government, one is blind; the other has cataracts and scoliosis of the spine. While I did not know of the latter's situation, I was aware of the former's handicap when I made my original decision. Their handicaps do not change the outcome here. Although the government may frame its case as it wishes, I observe, once again, that the government has identified victims of European Auto trading in over twenty-eight states. Should it decide that these disabled victims' testimony is necessary to its case, their difficulty in traveling to New York may be avoided by use of depositions under Rule 15. That, however, is a matter for the United States District Judge in the Southern District of New York to whom this matter is assigned. *See,* Rule 15, Fed. R.Crim.Pro.

The government's motion is denied.

It is so ordered.